## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

DARIN LANEY,

     Plaintiff,

v.                                                                    Case No. 3:19-cv-1278-TJC-JRK

LLOYD J. AUSTIN, III, U.S.
Secretary of Defense, PERSPECTA,
INC., and PERSPECTA
ENTERPRISE SOLUTIONS, LLC,

     Defendants.

---

## O R D E R

This employment case is before the Court on Defendant Lloyd J. Austin, III's [1] Motion to Dismiss (Doc. 19) and Defendants Perspecta Enterprise Solutions, LLC and Perspecta, Inc.'s Motion to Compel Arbitration and Dismiss or, Alternatively, to Stay Action Pending Arbitration (Doc. 18). Plaintiff Darin Laney alleges disability retaliation in violation of the Rehabilitation Act (Count II) and defamation per se (Count VII) against Austin. (See Doc. 1). Laney does not oppose dismissal of the defamation claim against Austin (Doc. 20), so only

---

[1] Lloyd J. Austin, III became the United States Secretary of Defense on January 22, 2021. (Doc. 47 n.1). Under Federal Rule of Civil Procedure 25(d), he is automatically substituted in his official capacity as the party Defendant for former Secretary of Defense Mark T. Esper.

the disability retaliation claim remains. Against Defendants Perspecta Enterprise Solutions, LLC and Perspecta, Inc. (collectively, "Perspecta"), Laney alleges disability discrimination in violation of the Rehabilitation Act (Count I), disability discrimination in violation of the Americans with Disabilities Act ("ADA") (Count III), failure to provide reasonable accommodation in violation of the ADA (Count IV), handicap discrimination in violation of the Florida Civil Rights Act ("FCRA") (Count V), and failure to provide reasonable accommodation under the FCRA (Count VI).

Laney filed a Response in Opposition to Austin's Motion to Dismiss (Doc. 20) and a Response in Opposition to Perspecta's Motion to Compel Arbitration (Doc. 22). Perspecta filed a Reply (Doc. 29) and Laney filed a Sur-Reply (Doc. 31). The Court held a hearing on the motions on September 9, 2020, the record of which is incorporated by reference. Following unsuccessful efforts to mediate (Doc. 42), Perspecta and Austin filed supplemental briefs in support of their motions (Docs. 47, 48), and Laney filed a supplemental brief in response (Doc. 51).

## I.    BACKGROUND

### A. The Parties

Laney is a United States Navy veteran who served multiple tours in Iraq and Afghanistan. (Doc. 1 ¶ 25). During his time in the service, Laney was shot twice and saw comrades killed alongside him. Id. As a result, Laney developed

post-traumatic stress disorder ("PTSD") and depression. (Doc. 1 ¶ 26). Though

his conditions have been diagnosed and treated with medicine and therapy,

Laney still suffers from bouts of severe depression and suicidal thoughts. <u>Id.</u>

Unfortunately, Laney was also recently diagnosed with cancer. <u>Id.</u> Following

his military service, Laney began working for DXC Technology ("DXC"), now

Perspecta, at the Jacksonville, Florida naval base. (Doc. 1 ¶ 22). Despite his

disability, Laney was able to perform the essential functions of his job. (Doc.

1 ¶ 27).

Perspecta, Inc., the current owner of Laney's former employer, provides

technology services to government customers across the United States. (Doc.

1 ¶ 11). At the time of key events in the Complaint, Laney was employed by

what was then Enterprise Services, LLC, which was owned by DXC. (Doc.

1 ¶ 12). On May 31, 2018, Enterprise Solutions merged with Vencore, Inc. and

KeyPoint Government Solutions, Inc. to create Perspecta Enterprise Solutions,

LLC. (Doc. 1 ¶ 12). Perspecta Enterprise Solutions, LLC is now a subsidiary of

Perspecta, Inc. <u>Id.</u> According to Laney, under the merger agreement, Perspecta,

Inc. retained responsibility for some claims related to employment with

Enterprise Services and DXC, including this matter. (Doc. 1 ¶ 13). Thus, Laney

has filed suit against both Perspecta, Inc. and Perspecta Enterprise Solutions,

LLC, collectively referred to herein as "Perspecta." (<u>See</u> Doc. 1).

Defendant Austin is the United States Secretary of Defense; this action is against him in his official capacity. (Doc. 1 ¶ 14). The United States Naval Facilities Engineering Command ("NAVFAC"), an executive branch of the Department of Defense, manages the Navy's systems and equipment. (Doc. 1 ¶ 15). NAVFAC operates out of the Jacksonville naval base and is headquartered in Washington, D.C. Id.

Perspecta has a contract with NAVFAC that requires Perspecta technicians to work on-site for NAVFAC at the Jacksonville naval base. (Doc. 1 ¶ 16). Laney worked as one of those technicians. Technicians must have a Common Access Card ("CAC") to perform IT work for NAVFAC. (Doc. 1 ¶ 23).

## B. Alleged Events Leading to Termination

Laney alleges that he began a full-time position on July 14, 2014 "with DXC (now Perspecta)," and that he had worked as a contractor "for Perspecta (via HP/HPEnterprise/DXC)" for two years before that time.[2] (Doc. 1 ¶ 22). By 2018, Laney was employed as a Technical Services Provider assigned to perform IT services for NAVFAC. Id. During his employment, Laney was never disciplined and never received a poor performance review. Id.

On March 27, 2018, Laney made a comment that was overheard by one of his co-workers, Greg Sneed. (Doc. 1 ¶ 28). Laney stated that he had taken

---

[2] The actual corporate entity for which Laney began his employment and his actual date of employment are discussed in more detail infra.

4

Xanax, and that if things did not get better and his cancer treatments did not start to work, then he would "do it the old fashioned way next time." Id. Two days later, when Laney was not at work and Sneed could not reach him, Sneed disclosed the comment to Anthony Joshua, NAVFAC's IT Director. (Doc. 1 ¶ 29).

Joshua contacted the Clay County Sheriff's Office, and an officer dispatched to Laney's home determined that Laney was not a threat to himself or others. (Doc. 1 ¶ 30). The officer observed that Laney denied making suicide threats. Id. Meanwhile, news of Laney's comment spread at the base, and NAVFAC Security Manager Mike Damato reported Laney to the Jacksonville Sheriff's Office as a "dangerous 'disgruntled employee,' [allegedly] based on stereotypes of veterans who suffer from PTSD and depression." (Doc. 1 ¶ 31). Jacksonville police also determined that Laney did not pose a threat. (Doc. 1 ¶ 32).

Laney was permitted to return to work on March 30, 2018 because he was not a threat to himself or others. Id. When he arrived, however, Damato had the base on lock-down and base police interrogated Laney, searched his car, and concluded that he was not a threat. Id. Laney's CAC was returned to his boss, Keith Gallagher. (Doc. 1 ¶¶ 23, 33). Representatives from the division where Laney had been working told Gallagher they had no problem with Laney returning, and Perspecta's security officers cleared Laney. (Doc. 1 ¶ 33). Laney received his CAC and returned to work around 12:30 p.m. that day. Id.

### C. Termination

Later on March 30, 2018, Gallagher terminated Laney's employment. Id. Gallagher stated that NAVFAC revoking Laney's CAC was the reason for termination but did not say why NAVFAC had done so. Id. NAVFAC later sent Laney a letter stating that his CAC was revoked because he was terminated by DXC. (Doc. 1 ¶ 34).

Defendants did not offer Laney accommodations, such as assistance through the V.A. Hospital or the Veterans Crisis Line. (Doc. 1 ¶ 35). Laney claims that "[t]hese types of accommodations are provided to other employees who are not categorized as dangerous 'disgruntled employees' based solely on stereotypes of veterans who suffer from PTSD and depression." Id. Laney asserts that Defendants categorizing him as a "threat" was not based on medical judgment, objective evidence, or assessment of his ability to safely carry out his job functions. Id. Instead, he alleges, they ignored the determinations of three law enforcement agencies and acted on flawed personal assumptions. (Doc. 1 ¶ 37).

Laney alleges that he has suffered from lost wages, lost benefits, emotional distress, public humiliation, and depression as a result of Defendants' conduct. (Doc. 1 ¶ 39). He further asserts that Defendants' unlawful actions were intentional, willful, malicious, and/or done in callous disregard for Laney's rights. (Doc. 1 ¶ 40).

### D. Procedural Posture

On August 8, 2018, Laney filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Rights ("FCHR"). (Doc. 1 ¶ 9). He later received a Right to Sue notice from the EEOC and filed this action on November 1, 2019. (Doc. 1 ¶ 10). Thus, all administrative prerequisites to this action are satisfied.

Austin requests that the Court dismiss the disability retaliation claim against him for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (See Doc. 19). Perspecta, on the other hand, points to a Mutual Agreement to Arbitrate Claims in Laney's employment agreement to argue that this dispute must be decided before an arbitrator, not before the Court. (Doc. 18 at 3–11). Perspecta asks the Court to enforce the arbitration agreement by compelling arbitration and dismissing the suit or, alternatively, staying the action pending arbitration. (Doc. 18).

## II.    DISCUSSION

### A. Austin's Motion to Dismiss (Count II)

Austin first contends that the Court should dismiss the disability retaliation claim because Laney was not terminated for disability alone. (Doc. 19 at 2–3). The Rehabilitation Act only applies to discrimination solely on the basis of disability. 29 U.S.C. § 794(a); see Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005) ("It is not enough for a plaintiff to demonstrate that an adverse

employment action was based partly on his disability. Rather, under the Rehabilitation Act, a plaintiff must prove that he suffered an adverse employment action 'solely by reason of' his handicap.") (citation omitted). Laney alleges that he was categorized as a dangerous, disgruntled employee "based solely on stereotypes of veterans who suffer from PTSD and depression." (Doc. 1 ¶ 36). Further, he alleges that Defendants took adverse employment action against him despite three independent judgments that he was not a security threat. (Doc. 1 ¶ 37). Austin insists that Laney was terminated at least in part because of his comment to Sneed, but that is an issue for summary judgment. (See Doc. 19 at 3). To survive a motion to dismiss, Laney need not prove that his termination was solely because of disability; he need only allege facts that could support such an inference, and he has done so.

Next, Austin argues that sovereign immunity bars Laney from seeking monetary damages. (Doc. 19 at 4). Laney concedes that monetary relief is not available but persists in seeking declaratory and injunctive relief, including reinstatement. (Doc. 20 at 4–5). Sovereign immunity prohibits monetary damages in Rehabilitation Act claims against federal agencies. See, e.g., Lane v. Pena, 518 U.S. 187, 192 (1996) ("The clarity of expression necessary to establish a waiver of the Government's sovereign immunity against monetary damages for violations of § 504 is lacking in the text of the relevant provisions."). However, Laney may still seek declaratory and injunctive relief

8

under the Act. Center v. Sec'y, Dep't of Homeland Sec., Customs & Border Prot. Agency, 895 F.3d 1295, 1300 (11th Cir. 2018) (stating that the Rehabilitation Act "broadly prohibits federal agencies from discriminating on the basis of disability and provides judicially enforceable rights"); see also Lane v. Dep't of Defense, Missile Defense Agency, No. 5:14-CV-02304-MHH, 2019 WL 4749985 (N.D. Ala. Sept. 30, 2019) (dismissing claims for compensatory and punitive damages while retaining claims for declaratory relief, injunctive relief, and reinstatement under § 504 of the Rehabilitation Act).

As to Laney's claim for injunctive relief, Austin further argues that the Court has no power to restore Laney's CAC access, which is required to access Jacksonville's naval base and his IT work station. (Doc. 19 at 4). Austin cites to Dep't of Navy v. Egan, 484 U.S. 518 (1988), a case about a Navy employee who was discharged when his security clearance was denied due to partially undisclosed criminal history. Austin asserts that "just as Egan bars 'judicial review of adverse employment actions . . . when the issue is denial or revocation of a security clearance' . . . so too should the Court decline to entertain Plaintiff's request to force the Navy to reinstate his CAC." (Doc. 19 at 4–5).

Many courts have held that Egan forbids judicial review of the merits of security clearance decisions. See, e.g., El-Ganayni v. U.S. Dep't of Energy, 591 F.3d 176, 182 (3d Cir. 2010) (citing cases). The Eleventh Circuit recently summarized its interpretation of Egan, stating:

> We have noted that <u>Egan</u> made clear that a decision concerning the issuance or non-issuance of security clearance is a matter within the purview of the executive and not to be second-guessed by the judiciary unless Congress has specifically provided otherwise. Moreover, we have extended <u>Egan</u> to apply not only to final denials or revocations of security clearances, but also to decisions made at the suspension or investigatory stage, determining that to review the initial stages of a security clearance determination is to review the basis of the determination itself regardless of how the issue is characterized.

<u>Murphy v. Sec'y, U.S. Dep't of Army</u>, 769 F. App'x 779, 782 (11th Cir. 2019) (quotation and citation omitted). Thus, when an employment discrimination claim "would require a court to weigh the validity of the executive's proffered reasons for revoking a security clearance, courts have held that adverse employment actions based on denial of security clearance are not subject to judicial review." <u>Baisden v. Winter</u>, No. CV204-212, 2006 WL 717193, at *3 (S.D. Ga. Mar. 20, 2006) (citing cases).

Laney's claim of disability retaliation against Austin hinges on revocation of Laney's CAC, which is analogous to a security clearance. Laney was not employed by the Navy; he was employed by DXC (now Perspecta) as a technical services provider, and he was terminated by his DXC supervisor. (Doc. 1 ¶ 21). Laney alleges that the actual reason for his termination is in question, and it may or may not have been due to revocation of his CAC. (Doc. 1 ¶ 23, 33, 34). Laney's Perspecta supervisor told him that he was terminated because NAVFAC had revoked his CAC, while NAVFAC provided a letter stating that

10

his CAC was revoked because Perspecta had terminated his employment. (Doc. 1 ¶ 34). Either way, NAVFAC's only tie to adverse employment actions against Laney was revoking his CAC; there is no other action Laney alleges NAVFAC took that may subject it to liability under the Rehabilitation Act. Therefore, under the principles of Egan, Laney's claim against Austin cannot survive.[3] Laney's claim for disability retaliation against Austin is dismissed with prejudice.

### B.    Perspecta's Motion to Compel Arbitration and Dismiss or, Alternatively, Stay Action Pending Arbitration

Perspecta asks that the Court compel arbitration and dismiss the case or stay the case pending arbitration based on a Mutual Agreement to Arbitrate Claims ("Agreement"). (Docs. 18, 18-3). Perspecta argues that Laney's claims are subject to the Agreement, which he entered into as a condition of his

---

[3] While analogous to a security clearance for purposes of Rehabilitation Act liability, a CAC is not the same as a security clearance. There appear to be federal regulations allowing for administrative review of a decision to revoke a CAC:

> Contractor employees who have had their CAC revoked, and for whom an appeal is allowed under this paragraph, may appeal to DOHA [Defense Office of Hearings and Appeals] under the established administrative process set out in 32 CFR Part 155. Decisions following appeal are final.

32 C.F.R. § 156.6(d)(3) – (4). Thus, Laney's avenue to appeal revocation of his CAC appears to be an appeal to DOHA, not this Court.

11

employment with Hewlett-Packard Enterprise Services ("HP"). (Doc. 18 at 1–3). Perspecta has attached the Agreement as an exhibit to its motion and provides the following facts. (Docs. 18 at 3, 18-3).

In an email dated July 15, 2014, Laney was offered a job as a Field Services Technician for HP Enterprise Services. (Doc. 18-3 at 2). The email set forth various terms and conditions of employment, including the requirement to sign the Agreement:

> Arbitration Agreement. This offer and your employment are also conditional upon you reviewing and agreeing to the Mutual Agreement to Arbitrate Claims. Arbitration has become a common practice in many areas of business and HP recognizes arbitration to be an effective way to resolve employment-related disputes. Please review the Mutual Agreement to Arbitrate Claims enclosed below.

(Doc. 18-3 at 2–3). In relevant part, the Agreement said:

> This Mutual Agreement to Arbitrate Claims ("Agreement") is between me (hereafter, "Employee") and Hewlett-Packard Company (hereafter the "Company" or "HP") or the subsidiary by which Employee is employed. Any reference to the Company will be a reference also to all direct and indirect parent, subsidiary, partners, divisions, and affiliated entities, and all successors and assigns of any of them. The Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) shall govern this Agreement, which confirms a transaction involving commerce. The Parties expressly agree that this Agreement shall be construed, interpreted, and its validity and enforceability determined, in accordance with the FAA. The mutual obligations by the Company and by Employee to arbitrate differences provide mutual consideration for this Agreement. It is mutually agreed that any and all disputes or claims as defined below between Employee and the Company shall be submitted to arbitration under the following conditions.

12

Id. at 4 (emphasis added). The Agreement "applies to any dispute . . . that Employee may have against: (1) the Company; (2) its current and former officers, directors, principals, shareholders, owners, employees, or agents; (3) the Company's benefit plans or the plan's sponsors, fiduciaries, administrators, affiliates, or agents; and (4) all successors and assigns of any of them." Id. The Agreement also requires all claims or issues regarding arbitrability, validity, scope, enforceability, interpretation, or application of the Agreement to be submitted to the arbitrator. Id. Covered claims include disputes arising out of discrimination based on disability. Id.

The email instructed Laney to accept his employment by e-signing through clicking an "Accept the offer" button. (Doc. 18-2 at 2). In doing so, the email stated that he acknowledged he had read, understood, and agreed to the terms and conditions of the Agreement and other enclosed documents. Id. The email stated that he must provide his acceptance on the same day the letter was sent. (Doc. 18-3 at 3). Laney's return email, also attached by Perspecta, indicates that he accepted the offer on July 16, 2014. (Doc. 18-2 at 2).

In the years since Laney accepted the Agreement, HP has undergone significant corporate reorganization. (Doc. 18 at 5–6).[4] Perspecta claims that

---

[4] Perspecta explains through the Declaration of James Johnston (Doc. 18-1), the Vice President of Perspecta, Inc., the various mergers that have taken place. After Laney accepted employment, Hewlett-Packard Company changed its name to HP Inc. in 2015, and spun off its enterprise information technology

Laney was still employed by Hewlett-Packard Company or its successors or assigns from the beginning of his employment until termination of his employment on March 30, 2018, and therefore remains bound by the Agreement. Id. at 6. Thus, Perspecta seeks to invoke the Agreement's arbitration provision.

Courts look to three factors in deciding whether to grant a motion to compel arbitration: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived. Moore-Woodland v. Blue Diamond Dolls, Inc., No. 8:16-CV-00421-T-24UAM, 2016 WL 11491578, at *2 (M.D. Fla. May 9, 2016). "[W]hile doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an

---

business, Hewlett Packard Enterprise Co. ("HPE"), making HPE the parent corporation to HP. (Doc. 18-1 ¶ 5). In 2017, HP was changed to Enterprise Services, LLC but remained the parent to Enterprise Services, LLC. Id. Later in 2017, HP spun off the Enterprise Services, LLC entity, which was merged with Computer Sciences Corporation, and the combined entity was DXC Technology. Id. at ¶ 7. After the merger, Enterprise Services, LLC remained an operating company of DXC. Id. In 2018, DXC divested itself of its public business, including Enterprise Services, LLC, and combined that public sector business with Vencore, Inc. and KeyPoint Government Solutions, Inc. Id. at ¶ 8. The combined entity was named Perspecta, Inc., and Enterprise Services, LLC remained an operating subsidiary of Perspecta, Inc. Id. Enterprise Services, LLC was later renamed Perspecta Enterprise Solutions, LLC, which remains an operating subsidiary of Perspecta. Id. at ¶ 9.

agreement to arbitrate has been made." <u>Dasher v. RBC Bank (USA)</u>, 745 F.3d 1111, 1115–16 (11th Cir. 2014).

Though Laney says he never agreed to arbitrate, the documents put forward by Perspecta demonstrate otherwise by a preponderance of the evidence. <u>Cf.</u> <u>Bazemore v. Jefferson Capital Sys.</u>, 827 F.3d 1325, 1330–31 (11th Cir. 2016) (finding company failed to establish that consumer entered into arbitration agreement when she applied for a credit card over the internet and there was no direct evidence of the agreement or its terms). Perspecta has shown the existence of the Agreement and its terms. (Doc. 18-3). The Agreement is broad, including language specifying that "the Company" encompasses all successors and assigns of any direct and indirect parent, subsidiary, partners, divisions, and affiliated entities. (Doc. 18-3 at 4). The provision on scope defers the issue of arbitrability to the arbitrator, and the Agreement explicitly covers disability claims, which Laney brings against Perspecta under the Rehabilitation Act, ADA, and FCRA. <u>Id.</u>

To be sure, Perspecta has a complicated corporate history. Laney signed the Agreement with HP, not with Perspecta. (<u>See</u> Doc. 18-3). Still, based on the documents provided and Laney's own explanation of his former employer's corporate reorganization, the Court finds that Laney accepted the Agreement and that Perspecta is "the Company" under the Agreement. (<u>See</u> Docs. 18-1; 18-2; 18-3). To the extent that questions remain regarding enforceability of the

15

Agreement by Perspecta, the scope of pre-hearing discovery, or the Agreement's fee provisions, all of which Laney raises in his response to Perspecta's motion (Doc. 22), those issues are for the arbitrator to consider. Laney must seek arbitration of the claims in this dispute. Because the arbitrator will consider Laney's challenges concerning scope, validity, and enforceability of the Agreement for the first time, a stay of Laney's claims is appropriate rather than dismissal. See Moore-Woodland, 2016 WL 11491578, at *6.

### III.   CONCLUSION

Accordingly, it is hereby

### ORDERED:

1.      Defendant Lloyd J. Austin, III's Motion to Dismiss (Doc. 19) is **GRANTED**. Plaintiff Darin Laney's claims in Counts II and VII against Defendant Lloyd J. Austin, III are **DISMISSED with prejudice**. Defendant Austin is no longer a defendant in this case.

2.      Defendants Perspecta Enterprise Solutions, LLC and Perspecta, Inc.'s Motion to Compel Arbitration and Dismiss or Alternatively, Stay Action Pending Arbitration (Doc. 18) is **GRANTED in part**, as stated herein.

3.      Plaintiff Darin Laney and Defendants Perspecta Enterprise Solutions, LLC and Perspecta, Inc. should proceed to arbitration in accordance with the Mutual Agreement to Arbitrate Claims (Doc. 18-3).

16

4.     This case is **STAYED** pending arbitration. The Clerk is directed to administratively close the file, pending further Order.

**DONE AND ORDERED** in Jacksonville, Florida the 4th day of March, 2021.



TIMOTHY J. CORRIGAN
United States District Judge

tnm
Copies:

Counsel of record

17